UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYROSH BROWN, #221950,

                Petitioner,

v.                                     CASE NO. 07-11685
                                     HONORABLE ANNA DIGGS TAYLOR

BLAINE LAFLER,

                Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

       Petitioner Tyrosh Brown, a state prisoner presently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's conviction for resisting and obstructing police officers in Grand Rapids, Michigan on August 17, 2003. Petitioner alleges that the police entrapped him and illegally entered his home and that the trial court violated his right to due process by conducting *voir dire* proceedings in his absence. Respondent Blaine Lafler urges the Court through counsel to deny the habeas petition. The Court has determined that Petitioner's entrapment claim and his contention that the police illegally entered his home are not cognizable claims on habeas corpus review and that Petitioner's claim about the *voir dire* proceedings lacks merit. Therefore, the habeas petition will be denied.

**I. Background**

       Petitioner was charged with four counts of obstructing and resisting a police officer. The

charges arose from an incident during which Petitioner allegedly prevented police officers from attempting to acquire information about a suspect named Edward Smith.  As more fully explained by the state court,

> [t]wo police officers arrived at defendant's home in search of a suspect in an earlier domestic violence complaint.  Officers saw defendant at the residence but immediately concluded that defendant was not the person for whom they were looking.  When the officers began to question defendant's mother, defendant became belligerent and started screaming at his mother and at the officers.  The officers' attempts to calm defendant proved futile, and because defendant continued to scream and swear, the officers attempted to arrest defendant for his disorderly behavior.  In an attempt to avoid arrest, defendant fled into the home where a struggle ensued with a third officer.  The struggle continued into the basement where defendant fought with four officers, but he was eventually handcuffed and taken into custody.

*People v. Brown*, No. 257547, 2005 WL 3440438, at *1 (Mich. Ct. App. Dec. 15, 2005).

Two of the four counts against Petitioner were dismissed during trial.  Petitioner did not testify or present any witnesses.  His defense was that the police instigated the situation.

On April 19, 2004, a Kent County Circuit Court jury found Petitioner guilty of two counts of resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d.  On June 7, 2004, the trial court sentenced Petitioner as a habitual offender to two concurrent terms of one and a half to fifteen years in prison.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, and on June 30, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Brown*, 475 Mich. 897; 716 N.W.2d 274 (2006).[1]

Petitioner filed his habeas corpus petition on April 16, 2007.  As noted, he alleges that (1)

---

[1]  Justice Marilyn Kelly voted to grant leave to appeal to consider whether the police subjected Petitioner to an abuse of authority and, if so, whether the abuse of authority rendered Petitioner's arrest unlawful.

the police entrapped him into committing the crime, (2) the police conducted an illegal search
and seizure in his home, and (3) the trial court violated his right to due process by conducting
*voir dire* proceedings in his absence.  Respondent maintains in an answer to the habeas petition
that Petitioner's first and second claims are not cognizable on habeas review and that the state
court's adjudication of his third claim was not contrary to, or an unreasonable application of,
Supreme Court precedent.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of
his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court
arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme] Court has on a set of materially
indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146
L. Ed.2d 389 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is
an "unreasonable application of" clearly established federal law "if the state court identifies the
correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies
that principle to the facts of the prisoner's case." *Id*., 529 U.S. at 413, 120 S. Ct. at 1523.

## III.  Discussion

3

### A.  Entrapment

Petitioner alleges that police officers entrapped him into committing the crime for which he was convicted by luring him out of his home with a promise that they would leave if he answered a few questions and demonstrated that he was not Edward Smith.  Petitioner claims that, after he proved to the officers that he was not Edward Smith, the police caused a disturbance, which led to his arrest.  The Michigan Court of Appeals addressed this claim on direct review and held that Petitioner was not entrapped into committing the charged offense.

The United States Supreme Court has not yet recognized a constitutional right to assert entrapment as a defense.  *Sosa v. Jones*, 389 F.3d 644, 645 (6th Cir. 2004); *see United States v. Russell*, 411 U.S. 423, 430-32, 93 S. Ct. 1637, 1642-43, 36 L. Ed. 366 (1973) (declining to adopt the defendant's proposed due-process defense to entrapment).  Consequently, the state court's rejection of Petitioner's entrapment claim is not contrary to, or an unreasonable application of, clearly established federal law.

Even if Petitioner's claim of entrapment were cognizable on habeas corpus review, the Court agrees with the state court's conclusion that Petitioner was not entrapped.   In entrapment inquiries, Michigan courts follow an objective test that focuses not on the subjective perception of the defendant, but rather on the objective conduct of government agents.  *People v. D'Angelo*, 401 Mich. 167, 172, 176-77; 257 N.W.2d 655, 657, 660 (1977).   A defendant is considered entrapped under state law "if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated."  *People v. Johnson*, 466 Mich. 491, 498; 647 N.W.2d 480, 485 (2002).

4

The testimony at trial established that Petitioner tried to prevent the police from questioning his mother about Edward Smith.  Petitioner yelled to his mother that she did not have to say anything to the police and that the police officers should leave.  He was yelling so loudly that Officer Sue Clare could not hear what Petitioner's mother was saying.  Officer Clare informed Petitioner that she and Officer Kent Cooper would leave if Petitioner simply permitted the officers to ask their questions.  Petitioner, however, ordered the officers to leave the premises.  Officer  Cooper encouraged Petitioner to calm down, but Petitioner stepped out of the house and made intimidating remarks to Cooper.  He continued to yell and use vulgar language and was then warned several times by Officer Clare that he would be arrested for disorderly conduct if he did not stop yelling.  Officer Clare eventually ordered Petitioner to turn around and put his hands behind his back.  Petitioner dared the officers to arrest him and then ran into the house.  Once inside, he continued to resist arrest and he got into a physical altercation with Officer Todd Butler.  It took four police officers and the use of pepper spray to subdue him.

Petitioner's mother testified that Officer Cooper placed his hand on his gun and insulted Petitioner by calling him "Junior" and telling him that his breath stunk and that he looked like a criminal.  Even if this were true, Cooper's insulting remarks apparently occurred after Petitioner instructed his mother not to answer the officers' questions about Edward Smith.  Furthermore, the remarks were not so reprehensible that they cannot be tolerated or would have induced a law-abiding citizen to commit a crime.  Thus, there was no entrapment under state law, and Petitioner is not entitled to relief on the basis of his first claim.

### B. Search and Seizure

Petitioner contends that the police entered his home and arrested him without a warrant in

violation of his rights under the Fourth Amendment.  The Supreme Court has stated that "the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" if the State provided an opportunity for "full and fair litigation" of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046, 49 L. Ed. 2d 1067 (1976).  For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner filed a motion to quash the charges against him on the ground that he had a right to resist arrest because the arrest was unlawful.  The trial court denied his motion, and the Michigan Court of Appeals determined that the trial court did not err in denying the motion to quash.  The Court of Appeals noted that the initial attempt to arrest Petitioner occurred outside his home and that the police officers entered the home only because Petitioner went there to elude them.

Petitioner also raised the issue of his allegedly illegal arrest in the Michigan Supreme Court.  He was given a full and fair opportunity to raise his claim at all levels of state court review.  Therefore, presentation of the claim was not frustrated by a failure of the state mechanism, and his claim is not cognizable here.

### C.  The Right to Be Present

Petitioner's third and final claim alleges that the trial court violated his right to due process by conducting *voir dire* in his absence.  Petitioner asserts that he did not disrupt the

6

proceedings and that there was no basis for removing him from the courtroom.  The Michigan Court of Appeals determined that Petitioner waived his right to be present at trial and was not prejudiced by his absence from the courtroom.  The Court of Appeals concluded that the trial court did not abuse its discretion, nor deprive Petitioner of due process, by removing Petitioner from the courtroom during *voir dire*.

### 1.  Legal Framework

A defendant in a criminal case has a right to be physically present in the courtroom at every stage of his trial.  *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058, 25 L. Ed. 2d 353 (1970); *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir.), *cert. denied*, __ U.S. __, 129 S. Ct. 2126 (2008).  *Voir dire* is a critical stage of a criminal trial at which a defendant has a constitutional right to be present because "[j]ury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability."  *Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 2246-47, 104 L. Ed. 2d 923 (1989) (citations omitted).

Of course, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."  *Allen*, 397 U.S. at 343; 90 S. Ct. at 1060-61.  When confronted with "disruptive, contumacious, stubbornly defiant defendants," trial courts "must be given sufficient discretion to meet the circumstances of each case."  *Id.*, 397 U.S. at 343, 90 S. Ct. at 1061.  It is constitutionally permissible to handle an obstreperous defendant by "tak[ing] him out of the courtroom until he

promises to conduct himself properly." *Id.*, 397 U.S. at 343-44, 90 S. Ct. at 1061.

### 2.  The Facts

On the first day of trial, defense counsel informed the trial court that Petitioner wanted to represent himself.  Petitioner informed the trial court that he and his attorney were not communicating or agreeing on matters and that, if the trial court did not provide him with another attorney, he would prefer to represent himself rather than continue being represented by his current attorney.  The trial court declined to appoint another defense attorney and denied Petitioner's request to represent himself.  The court warned Petitioner that if he disrupted future proceedings, the court would place him in a "fully wired" jail cell where he could hear everything that occurred in the courtroom and perhaps even watch the proceedings on a television.  (Tr. Apr. 12, 2004, at 56-71.)

On the following day, as the court was preparing to pick Petitioner's jury, Petitioner again complained that his attorney was not helping him.  The colloquy between Petitioner and the trial court reads as follows:

> THE DEFENDANT: What about me and my attorney, like I told you yesterday, about me being on trial with somebody that's not goin' to help me?
>
> THE COURT: I told you yesterday what we're going to do, Mr. Brown, so sit back, relax and –
>
> THE DEFENDANT: How can you just – how can you just do my life like that, if somebody's not goin' help me?  How can you just put me on trial like that, and I told you she's not tryin' to help me.
>
> THE COURT: Mr. Brown, you want to sit here and watch it, or do you want to listen from in there?
>
> THE DEFENDANT: I'm just tellin' you I'm not goin' to go to trial if nobody goin' --

(Tr. Apr. 13, 2004, at 7.)  At that point, the trial court interrupted Petitioner and ordered an

officer to place Petitioner in a cell where he could hear the proceedings.  The court informed the

prospective jurors that

> whether [the defendant's] sitting here or not is not evidence.  It has nothing to do
> with what happened.  So, you're still gonna assess things exactly the same way,
> based upon what the witnesses say.  Don't factor that in.

(*Id*. at 9.)  Before any questions were asked of the prospective jurors, the trial judge personally

went to see Petitioner in the holding cell and inquired as to whether he was prepared to behave

appropriately in the courtroom.  The judge decided to leave Petitioner in the holding cell because

Petitioner informed the judge that he would not cooperate unless the court fired his attorney.

Defense counsel, however, was granted permission to consult Petitioner during *voir dire* about

the exercise of peremptory challenges.  (*Id*.; Tr. Apr. 15, 2004, at 3-4).

Following *voir dire*, the trial court instructed the jury on some preliminary matters and

made the following additional remarks about Petitioner's absence from the courtroom:

> [L]ike I said earlier, that decision on his part [not to be present] has
> nothing to do with whether this crime did or didn't happen.  That's going to have
> to come from the witness stand here.  So, don't read anything into that.  Just
> recognize it as the assertion of a right, a right that's not asserted very often, but is
> asserted sometimes.  If you're doing what you have a right to do, you can listen to
> it here or there, and then we don't draw any conclusions from that.

(Tr. Apr. 13, 2004, at 120.)  Petitioner remained in the holding cell while the first witness, his

neighbor, testified about Petitioner's argument with the police on August 17, 2003.

At the beginning of the third day of trial, the trial court conducted another colloquy with

Petitioner and offered to let him stay in the courtroom if he were polite and did not disrupt the

proceedings.  Petitioner insisted that it did not matter to him whether he was there or not.  The

trial court allowed Petitioner to remain in the courtroom, and, at the end of the day, the court

9

noted that Petitioner had remained in the courtroom throughout the day, had behaved quite appropriately, and had consulted with his attorney from time to time.  (Tr. Apr. 15, 2004, at 5-11, 153-54.)

On the final day of trial, Petitioner initially stated that he wanted to testify, but then asked to be placed in the holding cell because he was not permitted to introduce some medical records in evidence.  (Tr. Apr. 19, 2004, at 28-33, 49-59.)  He apparently remained in the cell through closing arguments, jury instructions, and the reading of the jury's verdict.

### 3. Application

This Court does not believe that Petitioner was sufficiently disruptive on the first day of trial to warrant exclusion from the courtroom.  He was merely informing the trial court of his concerns about his attorney.  Unlike the defendant in *Allen*, Petitioner's conduct and language were not threatening or "so noisy, disorderly, and disruptive that it [was] exceedingly difficult or wholly impossible to carry on the trial."  *Allen*, 397 U.S. 337, 90 S. Ct. at 1058.  However, when the trial judge checked on Petitioner in the holding cell, Petitioner declined the invitation to return to the courtroom unless the trial court replaced his attorney.  Thus, there is some basis for the state court's conclusion that Petitioner waived his right to be present during *voir dire*.

Even assuming that the trial court violated Petitioner's right to be present, the right is subject to harmless error analysis.  *Rushen v. Spain*, 464 U.S. 114, 119 n.2, 104 S. Ct. 453, 456 n.2, 78 L. Ed. 2d 267 (1983); *see Gray*, 520 F.3d at 625.  A federal habeas court

> must assess whether the constitutional error in the state-court criminal trial "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993); *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328, 168 L. Ed.2d 16 (2007). If [the Court is] in "grave doubt" as to whether the error had such an effect, "that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115

S. Ct. 992, 130 L. Ed.2d 947 (1995). The *O'Neal* Court explained that "[b]y 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id*. at 435, 115 S. Ct. 992. This inquiry does not assign an affirmative burden of proof on [the petitioner], *id*. at 436, 115 S. Ct. 992, nor does it require [the petitioner] to show that the error was outcome-determinative, but instead "plac[es] the risk of doubt on the State." *Id*. at 439, 115 S.Ct. 992.

*Gray*, 520 F.3d at 625.

The Court believes the alleged violation of due process in this case was harmless for a number of reasons. First, Petitioner was warned that he could be placed in a holding cell if his conduct were disruptive. Second, he was placed in a cell where he could hear the proceedings in the courtroom. Third, he was represented by counsel, and defense counsel was permitted to consult Petitioner in the holding cell during *voir dire*. Finally, the trial court twice instructed the jurors not to let Petitioner's absence influence their verdict.

Petitioner contends that his absence during *voir dire* was not harmless because one juror slept through most of the trial and other jurors had friends or family members that were police officers. Petitioner could not have predicted that a juror would sleep through trial even if he had been present during *voir dire*, and he was permitted to consult with his attorney regarding the composition of the jury. The Court therefore concludes that Petitioner's absence during *voir dire* did not have a substantial and injurious effect or influence on the jury's verdict. The alleged violation of Petitioner's right to be present was harmless.

**IV. Conclusion**

Petitioner's first two claims are not cognizable on habeas review and his third claim lacks merit. Therefore, the state appellate court's decision affirming Petitioner's convictions did not

result in a decision that was contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court.  The Petition for Writ of Habeas Corpus [Dkt. #1] is **DENIED**.

A certificate of appealability may issue if Petitioner can "demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 327, 123 S. Ct. 1029, 1034, 154 L. Ed.2d 931 (2003)).

Reasonable jurists would not disagree with the Court's conclusion that Petitioner's first two claims (entrapment and illegal arrest) are not cognizable on habeas review.  The Court therefore declines to issue a certificate of appealability on those claims.  Petitioner's third and final claim regarding his right to be present during *voir dire* asserts a constitutional issue and deserves encouragement to proceed further.  Therefore, a certificate of appealability may issue on Petitioner's claim that he was denied his due process right to be present during a portion of his trial.  Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

DATED:  August 19, 2009                          s/**Anna Diggs Taylor**
                                                              ANNA DIGGS TAYLOR
                                                              UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 19, 2009.

Tyrosh Brown, #221590
G Robert Cotton Correctional Facility
3510 N Elm Street
Jackson, MI 49201-8877                               s/Johnetta M. Curry-Williams
                                                      Case Manager

13